UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 09-137-KSF

DAVID LOVELACE                                                           PLAINTIFF

v.                              **OPINION & ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security                                         DEFENDANT

* * * * * * * * * * *

Plaintiff, David Lovelace, brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of an administrative decision of the Commissioner of Social Security denying his

claim for period of disability, disability insurance benefits ("DIB") and Supplemental Security

Income ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision,

as it is supported by substantial evidence.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed his claim for benefits in March 2004 [TR 47-49, 321]. After two hearings, the

Administrative Law Judge ("ALJ") issued an unfavorable decision on October 31, 2005, and the

Appeals Council denied review on March 15, 2006 [TR 7-23].

In 2006, Plaintiff filed a lawsuit in the United States District Court for the Eastern District

of Kentucky and obtained an order and judgment reversing and remanding the case to the

Commissioner on September 11, 2006 [TR 347-352].[1] Pursuant to the Court order, the Appeals

Council remanded the case to the ALJ on March 8, 2007 [TR 346]. After a hearing, the ALJ issued

---

[1] In the interim, Plaintiff filed a new application for period of disability and disability
insurance benefits in December 2005 [TR 321, 418-419]. Plaintiff's claims were consolidated
for the purpose of the ALJ's decision [TR 321].

an unfavorable decision on February 19, 2008 [TR 318-337]. The ALJ's February 19, 2008 decision is the subject of Plaintiff's lawsuit that is currently before the Court.

At the time the ALJ rendered her decision, Plaintiff was 59 years old [TR 47, 318-337]. He has a seventh grade education and states that he cannot read or write [TR 63, 67, 80, 255]. Plaintiff has past relevant work experience as a tree trimmer, an assembler and a tobacco stripper [TR 64, 69-72, 77, 335]. He also worked part-time at a dollar store [TR 252-254, 553]. He claims that his ability to work is limited due to a limited education, an inability to read and write (which he claims is his main disability), high blood pressure and anxiety [TR 63, 80, 84-88, 91, 324, 442]. He also testified as to having nervousness and a "bad back" [TR 264, 267].

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the ALJ must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1) If the claimant is currently engaged in substantial gainful activity, he is not disabled.

(2) If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

(5) Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that

accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The ALJ began her analysis by determining that Plaintiff has met the insured status requirements of the Social Security Act through June 30, 2004 [TR 324]. At step one, the ALJ found that Plaintiff has not engaged in any substantial gainful activity since his alleged onset date [TR 324]. At step two, the ALJ determined that Plaintiff suffers from the severe impairment of mental deficiency [TR 324-327]. Continuing on to the third step, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals in severity any of the listed impairments, even when considering his mental deficiency [TR 327-331]. Thus, the ALJ determined that Plaintiff was not disabled at step three.

The ALJ then found that, based on the medically determinable evidence, Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he should be limited to simple, routine, repetitive work that does not require reading, writing or math. Additionally, the ALJ found that this work must not

involve any significant decision-making, use of judgment or frequent changes of job duties or job locations and that Plaintiff should not do work that involves strict production requirements [TR 331-335]. Based on this finding and the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform his past relevant work as a tree trimmer, an assembler and tobacco stripper, as this work does not require the performance of work-related activities precluded by Plaintiff's RFC [TR 335-337]. Accordingly, the ALJ further determined that Plaintiff was not disabled at step four [TR 335-337].

In addition, the ALJ discussed the VE's testimony regarding the existence of other jobs in the national economy that Plaintiff could perform [TR 335]. Considering the testimony of the VE, the ALJ concluded that, based on Plaintiff's age, education, work experience and RFC, there were other jobs that exist in a significant number in the national economy that he could perform, including as a material handler, a janitor or an offbearer loader [TR 335-337]. Thus, even assuming that Plaintiff was unable to perform his past relevant work, the ALJ determined that, in the alternative, he was not disabled at step five [TR 335-337].

The ALJ's decision that Plaintiff is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied his request for review on July 8, 2009 [TR 294-296]. Plaintiff has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## II.    GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42

U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## III. ANALYSIS

On appeal, Plaintiff argues that the ALJ's decision was not based on substantial evidence or decided by the proper legal standards for two reasons. First, Plaintiff argues that the ALJ erred in failing to find that he meets §12.05 (Mental Retardation) of the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app.1. Second, Plaintiff argues that the ALJ failed to establish that there is other work in the national economy that Plaintiff can perform.

With respect to the specific arguments made by Plaintiff, the Court notes that Plaintiff repeatedly makes fleeting references to doctors' opinions and medical records contained in the record without further explanation of the relevance of these opinions and records. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way,

leaving the court to...put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)(quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)). The Court's Standing Order entered in this case [DE #9] clearly instructs that any motion for summary judgment shall include a statement of the legal arguments presented at the beginning of the motion setting forth the plaintiff's arguments in a numbered list. The parties are further warned that the Court will consider only the arguments listed, will not formulate arguments on the parties' behalf and that the failure to submit such a statement may constitute grounds for denial of the motion. The headings of Plaintiff's motion indicate that his arguments are: 1) the "ALJ erred in determining that Claimant did not meet the criteria in listing 12.05C for mental retardation and by giving insufficient credibility to two examining psychologists and school records which all show mental retardation"; and 2) "the ALJ failed to sustain her burden of establishing that there is other work in the national economy that the Claimant can perform." Thus, these are the arguments that will be addressed by the Court. Notwithstanding the scattered nature of Plaintiff's motion, the Court has made great efforts to attempt to discern the basis for Plaintiff's arguments. However, to the extent that Plaintiff's motion suggests other errors made by the ALJ in reaching her decision that are not addressed by the Court, these arguments are deemed waived by Plaintiff's failure to explicitly present these arguments in the manner required by the Standing Order.

### A. THE ALJ'S DECISION THAT PLAINTIFF'S IMPAIRMENTS DO NOT MEET OR EQUAL LISTING § 12.05 IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff first argues that the ALJ erred at Step 3 of the sequential evaluation process in determining that he does not meet or equal the criteria in Listing § 12.05 for mental retardation. At

this step, the burden is on Plaintiff to show that he meets or equals an impairment listing in

Appendix 1 to the regulations. 20 C.F.R. 404 Supt. P. App. 1 (2007). *See Burress v. Secretary of*

*Health and Human Services*, 835 F.2d 139, 140 (6th Cir. 1987); *Lashley v. Secretary of Health and*

*Human Services*, 708 F.2d 1048, 1053 (6th Cir. 1983). When a claimant alleges that he meets a listed

impairment, he must present specific medical findings that satisfy the criteria of the particular listing.

*See* 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926; *Foster v. Halter*, 279 F.3d 348, 353 (6th

Cir. 2001).

      Listing § 12.05 provides, in pertinent part, as follows:

      12.05 Mental Retardation: Mental retardation refers to significantly subaverage
general intellectual functioning with deficits in adaptive functioning initially
manifested during the developmental period; i.e., the evidence demonstrates or
supports onset of the impairment before age 22.

      The required level of severity for this disorder is met when the requirements in A, B,
C, or D are satisfied.
. . .

      C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or
other mental impairment imposing an additional and significant work-related
limitation of function. . . .

      The introductory material to the mental disorders listing clarifies Listing § 12.05, stating:

      The structure of the listing for mental retardation (12.05) is different from that of the
other mental disorders listings. Listing 12.05 contains an introductory paragraph
with the diagnostic description for mental retardation. It also contains four sets of
criteria (paragraphs A through D). If [the claimant's] impairment satisfies the
diagnostic description in the introductory paragraph *and* any one of the four sets of
criteria, [the Commissioner] will find that [the claimant's] impairment meets the
listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 (emphasis added). To meet the requirements of a listed

impairment, Plaintiff must satisfy all the elements set out above. *Hale v. Secretary of Health and*

*Human Services*, 816 F.2d 1078, 1083 (6th Cir. 1983); *King v. Heckler*, 742 F.2d 968, 973-74 (6th Cir. 1984). *See also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.")(emphasis in original). This includes not only the diagnostic description in the introductory paragraph, but also any of the four sets of criteria. *Foster v. Halter*, 279 F.3d at 354. Thus, to meet the requirements of Listing § 12.05C, Plaintiff must show: "(1) he experiences 'significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period' (i.e., the diagnostic description); (2) he has a 'valid verbal, performance or full scale IQ of 60 through 70'; and (3) he suffers from 'a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" *West v. Commissioner of Social Security*, 240 Fed.Appx. 692, 697-698, 2007 WL 1991059 (6th Cir. 2007)(unpublished)(quoting Listing § 12.05C).

Plaintiff contends that his condition meets the requirements of Listing § 12.05C because he has a valid, verbal performance IQ score of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function. However, the record contains substantial evidence that he does not meet this listing, as he does not meet the requirement in the introductory paragraph for Listing § 12.05 that he demonstrate both significantly subaverage general intellectual functioning and deficits in adaptive functioning that initially manifested during the developmental period. In addition, the ALJ's determination that Plaintiff does not have a physical or other mental impairment imposing additional and significant work-related limitation of function is also supported with substantial evidence.

8

1.    Plaintiff Does Not Meet the Requirements of the Introductory Paragraph for Listing § 12.05

As noted above, in order to meet the requirements of Listing § 12.05, Plaintiff must first meet the introductory paragraph's requirement that he demonstrate significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (before the age of 22). The ALJ determined that, although Plaintiff has a severe "mental deficiency," he does not satisfy the diagnostic description for mental retardation because his "adaptive functioning is not indicative of mental retardation" [TR 324, 333, 336]. Accordingly, the ALJ determined that Plaintiff does not meet the requirements of Listing § 12.05. The record contains substantial evidence in support of this determination.

Adaptive functioning "includes a claimant's effectiveness in areas such as social skills, communication and daily living skills." *West*, 240 Fed.Appx. at 698. A medical expert ("ME"), Mary Buban, Psy.D., testified that, based on her review of the record, Plaintiff has "a higher level of adaptive functioning than would be indicated by his specific IQ scores" [TR 569]. The ME recognized that Plaintiff's IQ scores are within the range required by Listing § 12.05 [TR 562-563]. However, the ME further provided extensive testimony regarding ten areas of adaptive skill areas commonly used to evaluate overall adaptive functioning in assessing whether an individual is mentally retarded [TR 563-568]. In the area of communication, the ME testified that, despite his illiteracy, Plaintiff has no significant restriction [TR 565]. Plaintiff is able to communicate orally and his ability to comprehend and respond is intact [TR 565]. He also has no limitations in the areas of self-care, social skills, community use and leisure activity [TR 565-567]. He can take care of his own grooming and hygiene needs, he has friends, gets along with his children, is in a long-term

marital relationship and engages in social activities [TR 565-566]. In addition, he is able to drive, representing and affording a level of independence [TR 566]. Plaintiff has a mild limitation in the area of home living [TR 565-566]. For example, although he may be able to perform simple cooking, he would not be expected to read a recipe and may have difficulty with academically applied tasks, such as counting or making change [TR 566]. He also has a mild limitation in the area of self-direction, although he plays cards, hunts, fishes and bowled [TR 566-567]. In the area of health and safety, he demonstrates the ability to seek medical treatment and to effectively communicate his needs to his health care provider [TR 567]. He has a moderate limitation in functional academics, as he cannot read [TR 567]. He has a mild to moderate limitation in the work activity area, resulting in a limitation to simple, repetitive work [TR 567-568].

Based on the ME's review of the record, she set forth the following specific work-related limitation for Plaintiff: that he be limited to simple, repetitive tasks consistent with his intellectual abilities; no strict production quotas or strict timed tasks; and no reading and writing [TR 568, 572]. The ALJ accounted for this limitation in her RFC finding by limiting Plaintiff to simple, routine, repetitive work that does not require reading, writing or math, and does not involve significant decision-making, use of judgment, frequent changes of job duties or job locations, or strict production requirements [TR 331-332].

The ALJ gave "controlling weight" to the opinion of the ME [TR 333, 562-572]. *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001)(ALJ could properly rely on non-examining medical expert physicians to make sense of a record with conflicting medical opinions and evidence). However, the ME's testimony is bolstered by other evidence in the record regarding Plaintiff's adaptive functioning. For example, a consultative examiner, Joey Collins, Psy.D., examined Plaintiff in April

2004 [TR 117]. According to Dr. Collins, Plaintiff reported that he has no difficulty performing daily household chores and he is capable of daily personal hygiene [TR 121, 333]. Although he requires assistance in managing his finances, his social interactions appear to be within the normal range [TR 121]. Despite Plaintiff' low range of intelligence, Dr. Collins noted that Plaintiff has sufficient intellectual ability to carry out simple one and two-step instructions and tasks [TR 120-121]. Dr. Collins assigned a Global Assessment of functioning (GAF) score of 65, indicating only mild limitations in social, school and/or occupational functioning [TR 121, 333]. Thus, Dr. Collins' opinions, to which the ALJ indicated that she gave "some weight," [TR 332-333], further support the ALJ's finding that Plaintiff's adaptive functioning is not indicative of mental retardation. In addition, the ALJ noted Plaintiff's activities, including chores, yard work, going to the store, seeing friends, occasional hunting, playing cards and bowling, as well as his many years of past work [TR 51, 64, 77-80, 333-334].[2]

Although Plaintiff does not specifically argue that the ALJ's determination that his "adaptive functioning" is not indicative of mental retardation is not supported by substantial evidence, he does mention Dr. Collins' finding that Plaintiff would have difficulty adapting and responding appropriately to pressures found in the day to day work settings that require basic literacy [TR 121].

---

[2] In his motion for summary judgment, Plaintiff suggests that the ALJ's statements in her October 31, 2005 decision that Plaintiff "has no trouble performing household chores" and that he bowls are erroneous, pointing to his April 20, 2005 testimony in which he states that he has done household chores (without stating how often he has done them) and that he bowled a "long time ago" [TR 19, 265, 268]. However, the ALJ's conclusions are supported by other evidence in the record, including Dr. Collins' report indicating that Plaintiff "reported he has no difficulty performing all chores around his home" [TR 119] and Plaintiff's statement in April 2004 that he bowls two times per year [TR 79]. When there is inconsistent evidence in the record, it is the ALJ's role to weigh the evidence and resolve conflicts. 20 C.F.R. §§ 416.927, 416.946.

However, the ALJ accounted for Plaintiff's deficits in literacy in the RFC finding, as she limited Plaintiff to work that does not require reading, writing or math [TR 331-332].

Plaintiff also mentions Dr. Robert W. Noelker's findings that Plaintiff is unable to handle funds; his ability to understand, retain and follow instructions is poor; his ability to sustain attention and perform simple repetitive tasks is poor (however, with supervision, fair); his ability to relate to others, including fellow workers and supervisors, is poor; and his ability to tolerate the stress and pressures associated with day to day work activity is poor [TR 488]. The ALJ considered Dr. Noelker's opinion and gave it "little weight" [TR 333].

While there are variances in the opinions of the examiners, it is the duty of the ALJ to resolve these conflicts in evidence and assess the claimant's residual functional capacity. *See* 20 C.F.R. §§ 416.927, 416.946. The ALJ must consider not only the medical opinions, but also the other evidence presented. *Id.* As noted by the ALJ, Dr. Noelker's opinion is inconsistent with other medical evidence in the record, including the testimony of the medical expert and the state agency doctors [TR 333].[3] In addition, Dr. Noelker's report is internally inconsistent. For example, although Dr. Noelker states that Plaintiff had good relationships with family members, as well as some neighbors and friends, and rates his capacity to relate to peers and supervisors as "fair," he later states that Plaintiff had a poor ability to relate to others, including fellow workers and supervisors [TR 485-488]. As discussed above, Plaintiff demonstrated an ability to complete simple repetitive tasks through his daily activities, including his ability to drive a car, care for his own personal needs, watch television, and do chores and yard work, as well as through his past work history. In addition,

---

[3] For example, in addition to the evidence discussed above, reviewing psychological source Dr. Ilze A. Sillers concluded that Plaintiff is able to perform simple work, carry out simple instructions, demonstrate adequate judgment and make adequate decisions [TR 140].

Plaintiff's social relationships demonstrate his ability to relate to others. Considering all the evidence in the record, substantial evidence supports the ALJ's conclusion to reject Dr. Noelker's opinion and to find that he is actually able to complete simple, routine, repetitive work that does not require reading, writing or math, and does not involve significant decision-making, use of judgment, frequent changes of job duties or job locations, or strict production requirements [TR 333].

Plaintiff does not point to any other evidence in the record to support that he has a deficit in adaptive functioning that initially manifested prior to the age of 22. Thus, Plaintiff has failed to meet his burden of showing that he meets the requirements of the introductory paragraph to Listing § 12.05. Accordingly, the ALJ's finding that Plaintiff did not meet these requirements is supported by substantial evidence.

2. <u>Plaintiff Does Not Meet the Requirements of Listing § 12.05C that he has a Physical or Other Mental Impairment Imposing Additional and Significant Work-Related Limitation of Function</u>

Even if the ALJ's determination that Plaintiff did not meet the requirements of the introductory paragraph to Listing § 12.05 was not supported by substantial evidence, the ALJ further found that Plaintiff did not meet the specific requirements of Listing § 12.05C [TR 324-335]. Although the ALJ found that Plaintiff had a valid, verbal performance IQ score of 60 through 70, she found that he did not have a physical or other mental impairment imposing additional and significant work-related limitation of function [TR 324-335]. Again, this finding is supported by substantial evidence in the record.

With respect to his IQ score, Plaintiff argues that the ALJ did not consider Plaintiff's school records from the fourth and seventh grades showing IQ scores below 70. Instead, Plaintiff argues that the ALJ's decision only mentions one IQ score of 77 from the second grade. However, in her

final decision, the ALJ specifically considered and discussed Plaintiff's IQ scores of record below 70, including the fourth grade score of 68, the seventh grade score of 67-69, and the February 2006 IQ scores of 63, 64 and 61 obtained by Dr. Noelker [TR 325, 329-33]. In fact, contrary to Plaintiff's argument, the ALJ actually found that Plaintiff satisfied Listing § 12.05C's requirement that he have a valid verbal, performance, or full scale IQ of 60 through 70, notwithstanding the IQ score of 77 from the second grade [TR 330]. Thus, Plaintiff's argument that the ALJ did not consider his school records and other evidence showing an IQ score below 70 is without merit.

In addition, Plaintiff argues that the ALJ did not give sufficient weight to evidence showing that he has a physical or other mental impairment imposing additional and significant work-related limitation of function. Plaintiff refers to the ALJ's determination that his hypertension, back impairment and anxiety are non-severe. Plaintiff argues that the ALJ did not sufficiently credit the opinion of Plaintiff's treating physician, Troy Ashcraft, D.O., or the opinion of consultive examiner Dr. Noelker.

In a June 29, 2005 letter, Dr. Ashcraft provided a "personal assessment" of Plaintiff from the point of view of his treating physician [TR 237]. In this letter, Dr. Ashcraft indicated that he was treating Plaintiff with medication for several health problems, including hypertension, back pain and anxiety [TR 237].[4] Dr. Ashcraft concludes that "David Lovelace is disabled in more ways than one. His health is not good, but his education, being what it is, and his mental ability has disabled him to a degree also" [TR 237]. The ALJ gave little weight to Dr. Ashcraft's opinion [TR 332].

---

[4] In his Motion, Plaintiff only specifically refers to the ALJ's conclusion that his hypertension, back disorder and anxiety are non-severe [Plaintiff's Motion, p. 4]. Thus, although Dr. Ashcraft mentioned several other health problems, these are the only impairments addressed by the Court.

The ALJ is not required to give controlling weight to the opinion of a treating physician when the opinion is not supported by objective medical evidence or when it is inconsistent with the record, provided that the ALJ gives "good reasons" in her decision for not crediting the opinion. 20 C.F.R. § 404.1527(d)(2); *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *Warner v. Commissioner of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). In deciding the weight to be given to a medical opinion, the ALJ may consider the length and nature of the treating relationship, the supportability of the opinion, consistency, specialization, and any other factors that may be appropriate. *See* 20 C.F.R. § 416.927(d)(2). The supportability of the opinion depends on the degree to which the source presents relevant evidence to support the opinion, particularly medical signs and laboratory findings. *See* 20 C.F.R. § 416.927(d)(3); *see also Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-712 (6th Cir. 1988). The Sixth Circuit has held that a treating physician's opinion may be "undercut, to a degree, by the absence of underlying objective findings or corroborative clinical evidence." *Sias v. Secretary of Health and Human Services*, 861 F.2d 475, 479 (6th Cir. 1988). In addition, a medical source's statement that an individual is disabled is not a medical opinion about a claimant's functional limitations, but is instead an opinion on the ultimate issue in a disability case, the resolution of which is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e); 416.927(e). Thus, a statement that an individual is disabled is not given any special significance. *Id*.

In her decision, the ALJ gave several reasons for rejecting Dr. Ashcraft's opinion. On the whole, the ALJ declined to give Dr. Ashcraft's opinion controlling weight because she found it "too vague to be of much use" and because it "pertains to an issue reserved to the Commissioner" [TR

332]. Dr. Ashcraft did not place any specific work limitations on Plaintiff, but instead simply opined that Plaintiff is disabled based on his health, educational level and mental ability [TR 237]. As a treating physician's statement that an individual is disabled is not entitled to any special significance, the ALJ did not err by disregarding Dr. Ashcraft's conclusion regarding Plaintiff's disability on these grounds.

In addition, the ALJ concluded that Dr. Ashcraft's opinions were not supported by objective evidence in the record [TR 332]. Specifically, with respect to Dr. Ashcraft's statement that Plaintiff has back pain with radiculopathy into his legs, the ALJ noted that "there is no EMG/NCS to support this statement or ongoing neurologic deficits to show radiculopathy" [TR 332]. Plaintiff has failed to point the Court to any such evidence in the record. The ALJ also considered Dr. Ashcraft's specialization, disregarding his opinions regarding Plaintiff's mental functioning because Dr. Ashcraft is a family physician and not a psychiatrist [TR 332]. With respect to Plaintiff's other problems identified by Dr. Ashcraft, including hypertension, the ALJ noted that these impairments "have not required significant treatment other than with medication...[and] do not cause more than minimal limitations in his ability to perform work-related activities" [TR 332]. The ALJ's conclusions in this regard are supported by substantial evidence. Dr. Ashcraft's letter indicates that he was treating Plaintiff's health issues with medication [TR 237]. Although Dr. Ashcraft opines that Plaintiff's back pain "will most likely be a long-term problem and require pain management of some kind," [TR 237], other evidence in the record concluded that, although Plaintiff had a mild degenerative disk disease in his back (mostly age related), his physical examination was entirely normal and he is not impaired from this condition [TR 483]. Thus, the ALJ's decision to reject Dr. Ashcraft's opinion was not in error.

16

With respect to Dr. Noelker's diagnosis of Plaintiff's anxiety disorder, the ALJ found that Plaintiff's anxiety disorder is not a "severe" impairment (within the meaning of the Social Security Act) that interferes with his ability to do basic work-related activities [TR 327]. Although Dr. Noelker found that Plaintiff's anxiety may decrease his capacity to respond to criticism and may be exacerbated under increased stress [TR 485, 488], other evidence in the record supports the ALJ's conclusion that Plaintiff's anxiety disorder is not severe. For example, Dr. Theodros Mengesha opined that, notwithstanding Plaintiff's mental retardation, anxiety disorder, illiteracy and sleep problems, Plaintiff is not seriously impaired from these conditions [TR 483]. In addition, the ME testified that she did not see in the record any indication that Plaintiff's anxiety disorder is a severe impairment, particularly given the elimination of strict production quotas for Plaintiff [TR 569]. As noted above, when there are variances in the opinions of the examiners, it is the duty of the ALJ to resolve these conflicts in evidence and assess the claimant's residual functional capacity. *See* 20 C.F.R. §§ 416.927, 416.946. The ALJ must consider not only the medical opinions, but also the other evidence presented. *Id.* To the extent that Dr. Noelker's opinion suggests that Plaintiff's anxiety may interfere with his ability to work, given the inconsistencies between this opinion and other substantial evidence in the record supporting the conclusion that Plaintiff's anxiety disorder is not severe, as well as the internal inconsistencies in Dr. Noelker's report noted above, the ALJ did not err by rejecting Dr. Noelker's opinion regarding Plaintiff's anxiety disorder [TR 333]. Rather, the ALJ's determination that Plaintiff's anxiety disorder is not severe is supported by substantial evidence in the record [TR 326-327].

## B. THE ALJ DID NOT ERR BY RELYING ON THE VOCATIONAL EXPERT'S TESTIMONY

As noted above, the fourth step of the evaluation process requires the ALJ to determine whether a claimant's impairment prevents him from doing past relevant work. *Walters*, 127 F.3d at 529. If not, he his not disabled. *Id.* At the January 2008 administrative hearing, the VE testified that Plaintiff's past relevant work as an assembler was light work, and his past relevant work as a farm worker and tree trimmer were heavy work [TR 573]. The ALJ asked the VE to assume a person with the capacity to perform simple, routine, repetitive work involving one or two steps; no reading, writing, or math; no significant decision making or use of judgment; no frequent changes of job duty or job locations; no public contact; and no strict production or time requirements [TR 573-574]. The VE testified that such an individual could perform Plaintiff's past relevant work as an assembler farm worker and tree trimmer [TR 574]. The ALJ relied on the VE's testimony in finding that Plaintiff is able to perform his past relevant work as it is generally performed in the national economy and, accordingly, is not disabled [TR 335].

Notwithstanding the ALJ's prior determinations that Plaintiff was not disabled, the ALJ continued to the fifth step in the evaluation process and considered whether other work exists in the national economy that accommodates Plaintiff's RFC and vocational factors, such as his age, education and skills. *Walters*, 127 F.3d at 529. The VE testified that the hypothetical individual discussed above could also perform the medium jobs of a material handler, a janitor or an off-bearer loader and that these jobs exist in significant numbers in the local and national economies [TR 574-575]. The ALJ relied on this testimony and found that, even if Plaintiff is unable to perform his past

relevant work, Plaintiff could perform other work that exists in significant numbers in the national economy [TR 336].

Plaintiff argues that the VE's testimony conflicts with the occupational information supplied by the <u>Dictionary of Occupational Titles</u> ("DOT"). Social Security Ruling 00-4p provides, in part:

> Occupational evidence provided by a [vocational expert] or [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the [vocational expert] or [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] or [vocational specialist] evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p, 2000 WL 1898704.

However, at the 2008 hearing, the ALJ specifically asked the VE if his testimony was consistent with the DOT information, and the VE responded in the affirmative [TR 575]. Although SSR 00-4p affirmatively requires an ALJ to ask a VE whether there are conflicts between his expert testimony and information in the DOT, once the VE testifies that there are no conflicts, the ruling's mandate is satisfied and the ALJ is not under any further duty to conduct an independent investigation into the correctness of the VE's testimony. *Lindsley v. Commissioner of Social Security*, 560 F.3d 601, 606 (6th Cir. 2009). *See also Martin v. Commissioner of Social Security*, 170 Fed.Appx. 369, 374, 2006 WL 509393 (6th Cir. 2006)(unpublished)("Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."). Thus, the ALJ complied with the requirements of SSR 00-4p and, therefore, was entitled to rely on the testimony of the VE.

Plaintiff also argues that the hypothetical upon which the ALJ relied in finding that there is other work in the national economy that Plaintiff can perform was deficient as a matter of law.

Plaintiff does not specify the nature of the deficiency upon which his argument is based. However, Plaintiff does suggest that the hypothetical was inaccurate with respect to his inability to read. In support of this argument, Plaintiff cites to the VE's April 2005 hearing testimony. However, at the January 2008 hearing, the ALJ's hypothetical question clearly included a limitation of no reading, writing or math, as well as other limitations limiting Plaintiff to simple work [TR 573-574]. Thus, the hypothetical question was not deficient on the grounds that it did not include a limitation regarding Plaintiff's illiteracy. As the ALJ properly relied upon the testimony of the VE, as well as the consideration of Plaintiff's age, education, work experience and RFC, and determined that Plaintiff could perform other work that exists in significant numbers in the national economy, the Court will affirm the ALJ's decision. *See Davis v. Secretary of Health and Human Services*, 915 F.2d 186, 189 (6th Cir. 1990)(A VE's testimony, in response to a proper hypothetical question, provides substantial evidence in support of the commissioner's final decision); *Born v. Secretary of Health and Human Services*, 923 F.2d 1168, 1173-1174 (6th Cir. 1990)(when such testimony is elicited and the vocational expert identifies a significant number of jobs which the plaintiff can perform, the Commissioner's decision will be upheld)

IV.     **CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby

**ORDERS** as follows:

(1)     the plaintiff's motion for summary judgment [DE #10] is **DENIED**;

(2)     the Commissioner's motion for summary judgment [DE #11] is **GRANTED**;

(3)     the decision of the Commissioner is **AFFIRMED** pursuant to sentence 4 of 42 U.S.C. § 405(g) as it was supported by substantial evidence and decided by the proper legal standards; and

20

(4)     a judgment will be entered contemporaneously with this Opinion and Order.


This December 10, 2010.


 Signed By:

**_Karl S. Forester_** $KSF$

**United States Senior Judge**